UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TONEY CONVERSE                               CIVIL ACTION

VERSUS                                       NUMBER: 07-3986

CORNEL HUBERT, WARDEN                        SECTION: "B"(5)

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Toney Converse, and the State's response thereto. (Rec. docs. 1, 11). Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that Converse's petition be dismissed with prejudice.

**PROCEDURAL HISTORY**

Petitioner Converse is a state prisoner who is presently incarcerated at the Hunt Correctional Center in St. Gabriel, Louisiana. On November 27, 2001, Converse, following trial by jury, was found guilty on four counts of distribution of cocaine and one count of possession of cocaine with the intent to

distribute in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana.[1] On December 11, 2001, Converse was sentenced to eighteen years at hard labor as to each count with the sentences running concurrently and with the first five years to be served without the benefit of probation or suspension of sentence.[2] On February 19, 2002, Converse was found guilty of being a double offender under the Louisiana Habitual Offender Statute, LSA-R.S. 15:529.1.[3] The trial court vacated the sentence as to Count One and re-sentenced Converse to serve eighteen years at hard labor without the benefit of probation or suspension of sentence.[4]

Converse directly appealed his convictions and sentences to the Louisiana Fifth Circuit Court of Appeal which affirmed same via a published opinion on December 30, 2003. State v. Converse, 864 So.2d 803 (La. App. 5th Cir. 2003). Writs were subsequently denied by the Louisiana Supreme Court on June 4, 2004. State v. Converse, 876 So.2d 74 (La. 2004). Converse's conviction became final ninety days later, or September 2, 2004, when the delays for seeking a writ of certiorari from the U.S. Supreme Court expired and no application therefor was made. See Roberts v. Cockrell, 319 F.3d

---

[1] State rec., vol. 1 of 5, pp. 54-63.

[2] State rec., vol. 1 of 5, p. 65.

[3] State rec., vol. 2 of 5, pp. 439, 452.

[4] State rec., vol. 1 of 5, p. 72; vol. 2 of 5, pp. 465-466.

690, 694 (5th Cir. 2003).

On May 9, 2005, Converse, through counsel, filed an application for post-conviction relief, raising three claims for relief: 1) He was denied effective assistance of counsel at trial and pre-trial proceedings; 2) He was denied effective assistance of counsel at sentencing; and, 3) The trial court improperly considered extraneous factors in imposing an eighteen-year sentence at hard labor.[5] On July 20, 2005, the state district court issued an Order finding that claim 3) was procedurally barred from collateral review pursuant to La.C.Cr.P. art. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996). In that same Order, the court determined, with regard to claims 1) and 2), that an evidentiary hearing was necessary.[6] Following a March 10, 2006 evidentiary hearing, the court, on April 5, 2006, issued an Order denying claims 1) and 2).[7] The Louisiana Fifth Circuit Court of Appeal similarly denied Converse post-conviction relief. State v. Converse, No. 06-KH-633 (La. App. 5 Cir. Oct. 11, 2006) (unpublished opinion).[8] The Louisiana Supreme Court, on June 1, 2007, denied Converse's writ application. State v. Converse, 957 So.2d 172 (La. 2007).

---

[5] State rec., vol. 3 of 5.
[6] State rec., vol. 3 of 5.
[7] State rec., vol. 4 of 5.
[8] State rec., vol. 4 of 5.

3

Converse filed the instant habeas petition on June 29, 2007. (Rec. doc. 1). The State concedes that Converse's petition was timely-filed under 28 U.S.C. §2244(d) and state court remedies have been exhausted as required by 28 U.S.C. §2254(b)(1)(A).

Converse is now before the Court pursuant to §2254, urging the same three claims he urged in connection with his state post-conviction proceeding. To facilitate a resolution of these claims, the Court will recall the evidentiary facts established at his trial as aptly summarized by the Louisiana Fifth Circuit in the context of Converse's direct criminal appeal, as follows:

> Sergeant John Ladd, a narcotics officer with the Jefferson Parish Sheriff's Office, received an anonymous complaint from a drug hotline that indicated defendant, Toney Converse, was selling narcotics in an apartment complex at 261 Jules Avenue in Jefferson. Sergeant Ladd passed on the information to Lieutenant Raymond Gibbs, supervisor of the narcotics division.
>
> On April 18, 2001, Lieutenant Gibbs instructed Agent Megan Carter, an undercover narcotics officer, to drive through the Jules Avenue complex and attempt to make contact with defendant. Agent Carter was accompanied by an officer trainee who was also working undercover. Surveillance officers were stationed in the area to monitor any transactions, and to ensure Agent Carter's safety. Agent Carter proceeded to Jules Avenue and asked a man she encountered there if he knew where she could get a "twenty," i.e., a rock of crack cocaine. The man responded that he knew of someone who might have one. The man left Agent Carter, and returned shortly thereafter to inform her that someone was going to get the crack she wanted.
>
> Defendant approached Agent Carter's car window. He wore a Tulane University T-shirt. Agent Carter asked whether he was a Tulane student, and defendant answered affirmatively. Defendant gave Agent Carter twenty dollars worth of crack cocaine, and she gave him twenty dollars

4

in currency. Defendant also gave Agent Carter a piece of paper bearing the initials T.C., and a pager number. Defendant told Agent Carter to use that number should she wish to purchase more cocaine. Agent Carter left the area, met with backup officers and turned over the narcotics evidence to them.

On April 20, 2001, Agent Carter called defendant's pager, using the number he had given her. Defendant responded to the page by telephoning her. She asked him whether he would sell her more cocaine. Defendant told her to meet him, and she proceeded to 261 Jules Avenue. When she arrived, Agent Carter paged defendant again. Defendant came out of the residence to meet her. Agent Carter purchased one hundred dollars worth of crack cocaine from him, and then left the area.

On May 2, 2001, Agent Carter contacted defendant to arrange a third transaction. She proceeded to 261 Jules Avenue, and defendant was waiting outside of the building. Agent Carter purchased two hundred dollars worth of crack cocaine from him.

On May 7, 2001, Agent Carter paged defendant, and he contacted her. She told him she wanted to buy more crack cocaine from him. Defendant instructed her to meet him at a Shell filling station on Jefferson Highway at Labarre Road. Defendant was waiting there when agent Carter arrived. Defendant sold her one hundred dollars worth of crack cocaine.

Agent Carter testified that her vehicle was outfitted with a hidden camera and audio equipment. The transactions, with the exception of the third one, were captured on videotape. Agent Carter explained that defendant stood at the passenger side of her vehicle during that exchange, and he was out of the camera's range. There was, however, an audio recording of the third transaction. Video and audio tapes were played at trial for the jury.

On May 7, 2001, Agent Thomas Brison compiled a photographic lineup and presented it to Agent Carter. Agent Carter testified that she identified defendant as the man who had sold her crack cocaine. On May 10, 2001, Agent Carter contacted defendant for the last time, to direct him to a location where he would be arrested. Agent Carter arranged to meet defendant at the Shell filling station, where fellow officers assigned to the

surveillance team waited there for defendant to arrive. Agent Carter gave them a description of defendant's vehicle.

Lieutenant Gibbs testified that he saw defendant drive into the Shell Station's parking lot. Defendant exited his car, and officers approached him. Defendant attempted to flee on foot, and was stopped and placed under arrest by Lieutenant Alfred McNally. Once defendant was handcuffed, Gibbs and Agent Brison secured and searched his vehicle. They discovered a Wendy's Restaurant cup in the car's console. It contained crack cocaine.

Charles Krone, an expert in the analysis and testing of controlled dangerous substances testified that he conducted a series of tests on samples of the white, rock-like material Agent Carter and other officers obtained from defendant. The tests were all positive for cocaine.

Converse, 864 So.2d at 806-807.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a

federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850 (2002).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

**ANALYSIS**

    A.  **Ineffective Assistance of Counsel**

In his first two claims for relief, Converse argues that he was deprived of effective assistance of counsel as guaranteed by

7

the Sixth Amendment.  To merit relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984), by demonstrating that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  The burden of proving either element of Strickland is a heavy one and if proof of one element is lacking, the Court need not consider the other.  Id. at 697, 104 S.Ct. at 2069.  Moreover, "[i]f the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail."  Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir.), cert. denied, 493 U.S. 831, 110 S.Ct. 102 (1989).  In evaluating allegations of ineffectiveness, the Court must be mindful of the strong presumption that counsel's actions or inactions were part of a sound trial strategy.  Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981).

As noted in connection with the above recitation of the pertinent facts, all but one of the drug transactions between Converse and Agent Carter were captured on videotape and the one that was not videotaped was captured on audiotape. Converse claims that defense counsel was ineffective due to his failure to view these videotapes and listen to the audiotape, and seek a hearing on

8

a motion to suppress this evidence, prior to the commencement of trial proceedings. Converse also claims that counsel was ineffective in connection with his cross-examination of State witnesses, complaining about the fact that counsel asked few questions and, in the case of Agent Carter, no questions, in an effort to challenge the witnesses' testimony. Further, after trial, counsel failed to file a motion for new trial or any other post-verdict motion. Finally, Converse argues that counsel was ineffective in failing to set forth mitigating factors and argue, at sentencing, that the court should deviate from the statutory minimum sentence pursuant to State v. Dorthey, 623 So.2d 1276 (La. 1993).

In connection with Converse's ineffective assistance of counsel claims, the state district court, on March 10, 2006, conducted an evidentiary hearing.[9] At this hearing, Converse's trial counsel, Russell Stegeman, testified that even without the tapes, there was no question, based upon the evidence he obtained from the district attorney's office prior to trial, that Converse was the person who had sold drugs to Agent Carter. The identification of Converse as the drug seller was unmistakable, there was no controversial evidence contained on the tapes.[10] As

---

[9]A copy of the transcript of the March 10, 2006 evidentiary hearing is contained in the State rec., vol. 5 of 5.

[10]State rec., vol. 5 of 5, hearing transcript, pp. 7-8, 33.

9

Stegeman explained, his "trial strategy did not involve attempting to prove that these sales did not happen."[11] "[I]n my judgment...there was going to be no amount of questioning where I was going to get these witnesses to...say that [Converse] hadn't sold...drugs."[12] As a result, Stegeman's goals, in terms of what he hoped to achieve at trial in his defense of Converse, were relatively narrow.

Stegeman stated that he wanted to get Converse into a "drug court" rehabilitation program. He also wanted to get the charge against Converse of distribution of cocaine within 1000 feet of a school dropped based upon the argument that Converse was lured or entrapped by law enforcement officials to proceed to the Shell station where the drug transaction within 1000 feet of a school transpired. Finally, he wanted Converse to receive, if convicted, the minimum allowable sentence.[13]

Stegeman explained that he was not able to achieve his goal of having Converse placed in a rehabilitation program because Converse was a repeat drug offender.[14] However, he was successful with respect to his second goal in that the pertinent charge initially lodged against Converse was amended to eliminate the school zone

---

[11]State rec., vol. 5 of 5, hearing transcript, p. 14.

[12]State rec., vol. 5 of 5, hearing transcript, p. 20.

[13]State rec., vol. 5 of 5, hearing transcript, p. 22.

[14]State rec., vol. 5 of 5, hearing transcript, p. 20.

allegation.[15] Further, Converse, as a second-offender, faced a sentence ranging from fifteen years to sixty years and he received a sentence of eighteen years, much closer to the minimum than the maximum.[16]

On April 5, 2006, the state district court issued an Order determining that Converse had failed to satisfy Strickland's two-prong test.[17] The court based its decision on its finding "that none of defendant's claims seem to go beyond strategic choices made by his counsel at the time of the defendant's trial." The court noted that counsel was successful in raising the issue of entrapment, thereby eliminating the charge that Converse had sold drugs within 1000 feet of a school and reducing Converse's sentencing exposure. The court further noted that while "defendant risked a maximum sentence of sixty (60) years as a second felony offender...the trial court only sentenced [him] to eighteen (18) years at hard labor under the multiple bill statute."

Alternatively, the court concluded that even if Converse had shown that counsel was ineffective, he had failed to show that he was prejudiced by counsel's deficient performance. The court reasoned: "[M]ore questions and/or objections by Mr. Stegeman would

---

[15] State rec., vol. 5 of 5, hearing transcript, p. 11.

[16] State rec., vol. 5 of 5, hearing transcript at pp. 25, 32-33.

[17] A copy of the court's Order is contained in the State rec., vol. 4 of 5.

11

not have altered the outcome of the defendant's trial. The State proved beyond a reasonable doubt the elements of the offense, including the identification of the defendant. Thus, the defendant's claim of ineffective assistance of counsel is without merit."

The Court finds that the above determination on the part of the state court does not represent an unreasonable application of Strickland's two-prong test to the facts of this case. Based upon Counsel Stegeman's evidentiary hearing testimony, it is clear that counsel's alleged deficiencies were, in fact, strategic choices. Further, even if counsel's action, or lack of action, could properly be categorized as "deficient", there has clearly been no showing of prejudice given the overwhelming evidence submitted against Converse, in particular, Agent Carter's positive identification of Converse based upon her four drug purchases from Converse, three of which were videotaped.[18]

With regard to Converse's claim that counsel was ineffective in connection with his sentencing, as the state court noted, Converse faced, as a second offender, a possible sentence of sixty years. Instead, he received an eighteen-year sentence, only three years above the fifteen-year minimum sentence. The fact that counsel did not argue, as allowed under state law, specifically,

---

[18]A copy of Agent Carter's trial testimony is set forth in the State rec., vol. 2 of 5, pp. 341-373.

State v. Dorthey, 623 So.2d 1276 (La. 1993), that the court sentence Converse to a term of imprisonment lower than the statutory minimum, does not entitle Converse to federal habeas corpus relief. An alleged violation of state law, in the absence of a constitutional violation, is not relevant for purposes of attaining habeas corpus relief. See generally Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978, 113 S.Ct. 2977 (1993) (federal habeas review is limited to questions of constitutional dimension). Accordingly, the Court finds that Converse's claims of ineffective assistance of counsel are without merit.

### B. Trial Court Improperly Considered Extraneous Factors in Imposing Sentence

Converse complains that the trial court erred in considering extraneous factors not considered by the jury in imposing his eighteen-year sentence as a multiple offender, thereby violating the dictates of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000). As noted above, Converse raised this claim in connection with his state post-conviction proceedings. In an Order dated July 20, 2005, the state district court, the last state court to issue a reasoned opinion with respect to the instant claim, refused to review the claim on the merits, instead finding the claim to be procedurally barred under, inter alia, LSA-C.Cr.P. Art. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La.

1996).[19]

Federal habeas review of a constitutional claim is barred by the procedural default doctrine if the last state court to review the claim clearly and expressly states that its judgment rests on a procedural bar, provided that the bar constitutes an independent and adequate state procedural rule that is regularly applied by the state courts. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546 (1991); Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038 (1989). In order to satisfy the independence requirement, the last state court rendering a judgment in the case must "clearly and expressly" indicate that its judgment rests on a state procedural bar. Harris, 489 U.S. at 263, 109 S.Ct. at 1043; Amos v. Scott, 61 F.3d 333, 338 (5th Cir.), cert. denied, 516 U.S. 1005, 116 S.Ct. 557 (1995). Where the last reasoned opinion of the state court to consider the claim explicitly imposes a procedural bar, it is presumed that later state courts silently rejecting the claim did not disregard the bar. Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594 (1991). A state procedural rule is "adequate" when it is strictly and regularly followed and applied evenhandedly

---

[19]While the Louisiana Fifth Circuit agreed that pursuant to the provisions of La.C.Cr.P. art. 930.3, the instant claim was not subject to post-conviction review, the appellate court's comment in this regard constituted dictum as the appellate court earlier observed that the issue was not properly before it since Converse "failed to apply for writs from the trial court's July 20, 2005 ruling." State v. Converse, No. 06-KH-633 (La. App. 5 Cir. Oct. 11, 2006) (unpublished opinion).

to the vast majority of similar claims.  <u>Amos</u>, 61 F.3d at 339.  A presumption of adequacy arises when a state court expressly relies on a procedural bar in deciding not to review a claim for collateral relief.  <u>Lott v. Hargett</u>, 80 F.3d 161, 165 (5th Cir. 1996).  Various sections of this Court have previously determined that the Article 930.3/<u>Melinie</u> bar constitutes an independent and adequate state procedural rule that is regularly applied by the state courts.  <u>Tassin v. Lovell</u>, No. 99-CV-1630 (E.D. La. Oct. 26, 1999); <u>Williams v. Lensing</u>, No. 99-CV-1612, 1999 WL 670972 at *3-4 (E.D. La. Aug. 25, 1999); <u>Bibbins v. Andrews</u>, No. 99-CV-1398, 1999 WL 56273 at *2-3 (E.D. La. July 30, 1999); <u>Scott v. Cain</u>, No. 97-CV-3558, 1998 WL 273116 at *3 (E.D. La. May 27, 1998).

In light of the foregoing authorities, federal habeas review of the instant claim is barred by the procedural default doctrine.  An exception to the doctrine exists if Converse can show cause for the procedural default and actual prejudice as a result of the alleged constitutional violation, or if he demonstrates that the failure to entertain the claim will result in a fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 750, 111 S.Ct. at 2565.  "Cause" is something external to the petitioner, something that cannot be fairly attributed to him that impedes his efforts to comply with the state's procedural rule.  <u>Moore v. Roberts</u>, 83 F.3d 699, 704 (5th Cir. 1996), <u>cert</u>. <u>denied</u>, 519 U.S. 1093, 117 S.Ct. 772 (1997).  In order to prove a fundamental miscarriage of justice, a

prisoner must demonstrate his actual innocence.  <u>Glover v. Cain</u>, 128 F.3d 900, 904 (5th Cir. 1997), <u>cert.</u> <u>denied</u>, 523 U.S. 1125, 118 S.Ct. 1811 (1998).

Converse makes no showing of cause for having failed to properly and timely litigate the instant claim in the state court system prior to submitting it to the Court in his federal habeas petition.  Because Converse does not establish cause for his procedural default, the Court need not consider the element of prejudice.  <u>Murray v. Carrier</u>, 477 U.S. 478, 494-95, 106 S.Ct. 2639, 2649 (1986).  And no colorable showing of actual innocence being made here, Converse has not shown that the failure to entertain his claim will result in a fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 750, 111 S.Ct. at 2565.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that the application for federal habeas corpus relief of Toney Converse be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en</u> <u>banc</u>).

New Orleans, Louisiana, this __19th__ day of _____May_____, 2009.

```
                              _____
                              UNITED STATES MAGISTRATE JUDGE
```